

# CONNORS LLP

October 6, 2017

**Attorneys At Law**
Terrence M. Connors
Randall D. White*
John T. Loss
Vincent E. Doyle III
Michael J. Roach
Lawlor F. Quinlan III
James W. Grable, Jr.
Joseph D. Morath, Jr.
Mollie C. McGorry
Nicholas A. Romano
Caitlin M. Higgins
Christina S. Parker
Christopher J. Larrabee
Caitlin E. O'Neil
Trevor N. White
Sarah M. Washington

**Paralegals**
Curtis J. Ahrens, Jr.
John P. Kromer
Sara E. Lyons
Christine A. Trojan, R.N.
Katherine M. Grossberg
Margaret Dickey, R.N.
Julie Scott, L.P.N.
Lea Ann Wilczak, R.N.
Dianne M. Lysarz, R.N.

*Also admitted in
District of Columbia

<u>*Via CM-ECF*</u>

Honorable Valerie E. Caproni
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re: *United States v. Joseph Percoco, et al.*
       No. 16-CR-776 (VEC) (S.D.N.Y.)

Dear Judge Caproni:

  We represent Kevin Schuler. We write on behalf of Messrs. Schuler, Ciminelli, and Laipple (the "Buffalo Defendants") regarding the recently amended wire-fraud charges set forth in the Second Superseding Indictment (Dkt. 321). We also join in the letter filed by Defendant Louis Ciminelli but write separately to add an additional point in favor of dismissal.

  On September 22, 2016, the Buffalo Defendants were (very publicly) arrested and brought to court pursuant to a complaint. Since then, the government has filed an indictment and two superseding indictments; produced millions of pages of discovery; responded to a bill of particulars by simply referencing the millions of pages of discovery; and opposed our motion to dismiss with little more than rote verbiage.

  And, yet, we stand here one year after arrest without so much as an inkling as to the alleged harm at issue (an essential element of any wire fraud theory, including the right to control). The government maintains that it need only track the statutory language of a crime in an indictment. Yet, the Supreme Court demands more: "[A]n indictment not framed to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute." *Russell v. United States*, 369 U.S. 749, 765 (1962) (internal

quotations and citations omitted). In other words, "an indictment must enable the defendant to enter a plea that will bar any 'future prosecutions for the same offense.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974). Even the United States Attorney's Office Manual requires more, stating that "[a]n indictment need only allege the essential facts, that is the facts and elements of the alleged offense necessary to inform the accused of the charge so that the defendant may prepare a defense and invoke the Double Jeopardy Clause when appropriate." Here, there can be no "reasonable certainty" of the alleged conduct because the government refuses to inform the defendants of the economic harm.

It is elementary, then, that "where the definition of an offen[s]e, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must . . . descend to particulars." *Russell*, 369 U.S. at 765 (internal quotation marks omitted). This precept has not changed. Importantly, the government knows how to allege economic harm, as it recently demonstrated in *United States v. Person et al.* ("NCAA Complaint").[1] There, the government explicitly alleged **what** the purported economic harm was on its right to control theory, stating that "PERSON and MICHEL, and others known and unknown, participated in a scheme to defraud, by telephone, email, and wire transfers of funds, among other means and methods, University- by making and concealing bribe payments to student-athletes at University-1 and/or their families, which deprived University-1 of its right to control the use of its assets, **including the**

---

[1] We cite the NCAA complaint simply for comparison purposes. That the government alleged more in the NCAA complaint with respect to economic harm does not mean we believe it has sufficiently alleged, or can actually prove, a cognizable right-to-control case. Nor do we endorse the government's use of the right-to-control theory as a fall back for when other criminal charges fail — a view of which many other circuits share. *See, e.g., United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014) (holding that the "right to control" property and "the right to accurate information" related to that property are "not the kind of 'property' rights safeguarded by the fraud statutes"); *United States v. Walters*, 997 F.2d 1219, 1227 (7th Cir. 1993) (emphasizing the mail and wire fraud statutes, by criminalizing schemes "to obtain money or property," clearly "contemplate a transfer of some kind"); *see Monterey Plaza Hotel Ltd. Pshp. v. Local 483 of the Hotel Emps. Union*, 215 F.3d 923, 926-27 (9th Cir. 2000) ("The purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings."); *United States v. Baldinger*, 838 F.2d 176, 180 (6th Cir. 1988) (§ 1341 "was intended by the Congress only to reach schemes that have as their goal the transfer of some-thing of economic value to the defendant" (quotation omitted)).

decision of how to allocate a limited number of athletic scholarships, and which, if revealed, would have further exposed University-1 to tangible economic harm, including monetary and other penalties imposed by the NCAA . . ." (emphasis added).

This, of course, is a far cry from the Second Superseding Indictment, which alleges that defendants:

> Devised a scheme to defraud Fort Schuyler of its right to control its assets, and thereby exposed Fort Schuyler to risk of economic harm, by representing to Fort Schuyler that the bidding processes leading to the award of certain significant taxpayer-funded development contracts were fair, open, and competitive, when, in truth and in fact, KALOYEROS and Todd Howe, in collaboration and in concert with AIELLO, GERARDI, CIMINELLI, LAIPPLE, and SCHULER, used their official positions to secretly tailor the requests for proposals ("RFPs") for those contracts so that companies that were owned, controlled, and managed by AIELLO, GERARDI, CIMINELLI, LAIPPLE, and SCHULER would be favored to win in the selection process for the contracts . . . .

(Dkt. 321, ¶ 39).

When juxtaposed with the NCAA Complaint, the absence of economic harm in the Second Superseding Indictment is glaring. The Buffalo Defendants are not asking the government to lay out every detail of its proof. Rather, we seek only what we are entitled to: the **essential facts** of the alleged offense (and that which the government affords other defendants in other cases).

Simply put, the government's refusal to allege economic harm, particularly in light of *Davis* and the recent NCAA Complaint, is suspect. Worse still, it infringes upon defendants' Fifth and Sixth Amendment rights. It hinders defense counsel from preparing an adequate defense. It stymies the defendants' ability to discern what exactly they are being charged with, and it undermines the Constitutional protections to which defendants in this country are entitled.

Judge Caproni
October 6, 2017
Page 4 of 4

The government contends that this case is distinguishable from *Davis*. The similarities, however, remain striking: several superseding indictments, changing theories, reliance upon the amorphous right-to-control theory, the deprivation of serious Constitutional rights as to the defendants, and, inevitably, a shared outcome. At bottom, the Court can (and should) dismiss the charges in the indictment at this stage because, as discussed in Defendant Ciminelli's letter, the government's newest theory fails *as a matter of law*.

Thank you for the opportunity to respond to the Second Superseding Indictment. We appreciate your continued attention to this matter.

Respectfully,

/s *Terrence M. Connors*

Terrence M. Connors


cc:     All counsel of record (*via CM-ECF*)