

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 29, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>   Re:   *United States* v. *Alain Kaloyeros, et al.*, 16 Cr. 776 (VEC)

Dear Judge Caproni:

The Government writes in response to the motions filed by defendants Alain Kaloyeros, Steven Aiello, and Michael Laipple, to preclude the testimony of the Government's rebuttal expert, Dr. George Harris. For the reasons set forth below, should the Court permit either of the defendants' experts to testify (which, for the reasons detailed in the Government's May 21, 2018 letter, it should not), the Court should allow the Government to present Dr. Harris's testimony in its rebuttal case. In the alternative, the Government requests a *Daubert* hearing so the Court can determine the relevance and reliability of Dr. Harris's opinions.

### A. Background Facts

As the Court is aware, despite the availability of witnesses from Fort Schuyler and its Board of Directors to testify at trial, Aiello and Laipple each propose calling an individual with no professional dealings with Fort Schuyler or their Requests for Proposals ("RFPs") to testify as an expert about Fort Schuyler and its RFPs. Aiello seeks to qualify Ruth Walters, the founder of a procurement consulting firm, "The Walters Group," as an expert to provide testimony regarding the following: (1) "the difference between public and private procurement processes;" (2) "the laws and regulations involved in a Request for Proposal (RFP) process;" (3) "that potential bidders are not preclude[d] from receiving, reviewing, or providing feedback on a draft or prospective RFP;" (4) "that Fort Schuyler Management Corporation is not a state agency that is bound by New York State procurement laws;" (5) "that the feedback provided by Mr. Gerardi on the draft RFP did not have a[n] effect on the competitive process;" and (6) "that the final RFP for the Preferred Developer in the Syracuse Region did not preclude an open, fair, and competitive process." (Ex. A. ("Aiello Expert Ltr." 1-2)).

Laipple seeks to qualify Joseph Hogan, whose experience has yet to be fully revealed, as an expert to provide testimony regarding the following: (1) "that the projects from Fort Schuyler Management Corporation ("FSMC") and the Fuller Road Management Corporation ("FRMC") suggests their project[s] were non-public work"; (2) "RFP Project[s] within the State of New York

and typical practices by contractors"; (3) that "[t]estimony about the content of a forthcoming request for proposal . . . between an issuer and a potential responder are lawful, commonplace in the industry, and beneficial to both parties;" (4) that "the Buffalo RFP was generic and terms did not exclude qualified developers in the greater Buffalo area;" (5) that "the Buffalo RFP was consistent with both industry standards and the past practice of FSMC and FRMC;" (6) that "the Buffalo RFP was, in reality, an RFQ and did not pertain to a specific project and responders were not competing on price;" (7) that "winning the Buffalo RFP meant obtaining an opportunity to negotiate a contract;" (8) that "because the Riverbend construction was not public work, New York State bidding laws did not apply;" and (9) testimony about "procurement models available in New York State, and the genesis of special-purpose entities like FSMC and FRMC". (Ex. B. ("Laipple Expert Ltr." 1-2)).

For the reasons stated in the Government's letter dated May 21, 2018, (Docket No. 668), the proffered testimony of Walters and Hogan is irrelevant and unreliable and should therefore be precluded under Federal Rule of Evidence 702. As the Government explained in its letter, the laws, regulations, customs, and practices surrounding private and public procurement procedures are irrelevant to the charges at issue. Rather, the Indictment alleges that the defendants participated in a conspiracy to defraud Fort Schuyler by concealing the fact that the RFPs at issue were rigged to benefit the Buffalo and Syracuse Developers. Whether the communications between the developers and Alain Kaloyeros were part of a private procurement process or a public one is immaterial to what the jury has to find—namely, whether the defendants materially misrepresented to Fort Schuyler's Board of Directors that they were engaged in an open, fair and competitive process. For this reason, expert testimony from either side on the general procedures governing private and public RFPs will not aid the jury in determining guilt, and is irrelevant.

Nevertheless, if the Court should permit either of the defendants' experts to testify, then the Government requests that its expert, Dr. George Harris, be permitted to testify to rebut the testimony of the defense expert(s). As described in his *curriculum vitae*, which is included in Exhibit C ("Gov't Expert Notice"), Dr. Harris is an expert in procurement, materials management, lean management and quality systems. He has been formally educated in procurement practices and has practiced in the field of procurement for approximately 26 years as the owner of a consulting firm, the Calyptus Consulting Group, that deals with various procurement related issues.

If called as an expert witness, the Government anticipates that Dr. Harris will testify as to industry practices with respect to public RFPs, and specifically that, based on his extensive experience in procurement matters, he believes that it is inappropriate and highly unusual for the entity issuing the RFP (the "Issuing Entity") to share a draft with a single potential bidder. Moreover, the Government expects that Dr. Harris will testify that it is considered inappropriate within the procurement industry for the Issuing Entity to meet and discuss a public RFP, prior to its official issuance, with a single potential bidder. Dr. Harris will describe the normal RFP procedures followed in the industry, including that if the Issuing Entity wants comments on its proposed RFP, it should send the draft to many companies in order to ensure transparency and fairness in the the process. This anticipated testimony will rebut the expected testimony of the experts proposed by Aiello and Laipple. Specifically, it will rebut Walters' claim that "potential bidders are not preclude[d] from receiving, reviewing, or providing feedback on a draft or prospective RFP," (Ex. A. 2) and Hogan's claim that "[t]estimony about the content of a

forthcoming request for proposal . . . between an issuer and a potential responder are lawful, commonplace in the industry, and beneficial to both parties," (Ex. B. 2).[1]

### B.  Legal Standard

#### 1.  Rebuttal Testimony

"The function of rebuttal evidence is to explain or rebut evidence offered by an opponent." *United States* v. *Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992) (internal citations omitted).  *See, e.g.*, *United States* v. *Baker*, 926 F.2d 179, 181 (2d Cir. 1991) (rebuttal evidence properly admitted where it bore directly on issue raised by defendant in defense cases); *United States* v. *Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) (where defendant's testimony implied that he had no connection to drug trafficking, rebuttal evidence showing involvement in narcotics trafficking was properly admitted).  "A district court has wide discretion in determining whether to permit evidence on rebuttal." *Tejada*, 956 F.2d at 1266.  The Court's decision concerning the scope of rebuttal testimony will not be disturbed absent an abuse of discretion.  *See Pitasi* v. *Stratton, Corp.*, 968 F.2d 1558, 1562 (2d Cir. 1992).

#### 2.  Expert Testimony

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is "both relevant and reliable." *Tiffany (NJ) Inc.* v. *eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (quotation marks omitted).  The Court is the "gatekeeper" of such evidence.  *See United States* v. *Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364, at *1 (S.D.N.Y. Nov. 14, 2014).  In that role, the Court "must make several determinations before allowing expert testimony: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *Tiffany*, 576 F. Supp. 2d at 458 (citing *Nimely* v. *City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)).  Furthermore, even if all these requirements are met, the Court may nonetheless exclude the expert testimony under Federal Rule of Evidence 403 if its prejudicial effect substantially outweighs its relevance.  *United States* v. *Mulder*, 273 F.3d 91, 101 (2d Cir. 2001).

Expert testimony is relevant when it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  Although "Rule 702 embodies a liberal standard of admissibility for expert opinions," Nimely, 414 F.3d at 395-96, such testimony "should be limited to situations in which the subject matter is beyond the ken of the average juror," United States v. Lombardozzi, No. 02 Cr. 273 (PKL), 2003 WL 1907965, at *2 (S.D.N.Y. Apr. 17, 2003).  Accordingly, expert testimony is not proper with respect to "matters which a jury is capable of understanding and deciding without the expert's help." Andrews v. Metro–North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989).

---

[1] The Government further anticipates that Dr. Harris will testify that it is very unusual for an Issuing Entity to set an early deadline for interested companies to request the RFP, and to block such companies from getting a copy of the RFP when the due date for responses is not imminent.  Dr. Harris will testify that it is also very unusual for an Issuing Entity to require interested companies to sign a non-disclosure agreement before they can receive a copy of the RFP.

May 29, 2018
Page 4

Furthermore, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony" and thus are not relevant testimony. *In re Rezulin Prods. Liab. Litig.* ("*Rezulin*"), 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see also Linde* v. *Arab Bank, PLC*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011) (precluding testimony of "[e]xpert opinions regarding the motivations of suicide bombers and the charitable intentions of the Saudi Committee In Support of the Intifada Al Quds"). Indeed, "the question of intent is a classic jury question and not one for the experts." *Rezulin*, 309 F. Supp. 2d at 547 (quotation marks and alteration omitted). Speculative expert testimony about intent "cannot be saved by couching [the expert's] opinion as 'industry custom and practice.'" *Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 183 (S.D.N.Y. 2008).

The reliability inquiry is flexible and "must be tied to the facts of a particular case." *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 150 (1999). The Second Circuit has emphasized that "it is critical that an expert's analysis be reliable at every step." *Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.*; *see also id.* at 265 ("[T]he district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" (quoting Fed. R. Evid. 702)). Minor flaws with an otherwise reliable expert opinion will not bar admission of that evidence; however, the Court should exclude the expert evidence "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* at 267 (quotation marks omitted).

C. Discussion

In each of their respective briefs, Kaloyeros, Aiello, and Laipple make the same argument – *i.e.*, Dr. Harris's testimony should be precluded as irrelevant because his opinions on what is allowed in public procurement processes will not shed light on the private procurement processes conducted by Fort Schuyler with respect to the Buffalo and Syracuse RFPs. *See (Ex. D. ("Kaloyeros Preclusion Ltr."* 4)) ("Dr. Harris's expertise regarding 'public sector' procurement rules is simply not relevant to the issues in the June Trial. FSMC . . . is a private not-for-profit corporation."); *(Ex. E. ("Aiello Preclusion Ltr." 3))* (". . .the opinions that Mr. Harris could offer are not relevant since he would be comparing the private procurement process at issue here to his experience in public procurement processes around the country."); *(Ex. F. ("Laipple Preclusion Ltr." 3))* (". . . all of Mr. Harris's opinions are irrelevant . . . Mr. Harris's opinions concern 'industry practices with respect to *pubic RFPs*.' . . . But the Buffalo and Syracuse RFPs were *private* procurements").

The defendants' argument shows a lack of understanding of the charges at issue. As described, the question of whether Fort Schuyler, as a private entity, was free to disregard public procurement rules in managing its RFP processes is irrelevant in determining the defendants' guilt. The defendants have been charged with participating in a wire fraud conspiracy, not a procurement fraud conspiracy. Accordingly, the relevant question for the jury is whether the defendants deceived Fort Schuyler and its Board of Directors into believing that the RFP processes Fort

May 29, 2018
Page 5

Schuyler used to select a preferred developer for its development projects in Buffalo and Syracuse were fair, open and competitive when, in truth and in fact, the RFPs related to those projects had been secretly tailored by the defendants to favor the Buffalo Developer and the Syracuse Developer.

At trial, the Government expects that multiple witnesses who worked for Fort Schuyler, including the president and the director of procurement, will testify that they generally followed the SUNY Research Foundation's procurement policies when they administered RFPs, and that those policies were intended to promote open and free competition in procurement transactions to ensure the selection process was not influenced improperly. Moreover, the Government expects that Fort Schuyler Board members will testify that they understood that the RFPs were administered in general accordance with the Research Foundation guidelines and thus were not improperly influenced. That said, testimony by Dr. Harris about industry practices with respect to public RFP processes is clearly relevant, as the defendants led Fort Schuyler's Board to believe that such practices were being followed with respect to the Buffalo and Syracuse RFPs. In addition, allowing the defendants' experts to testify about various private procurement practices not applicable to Fort Schuyler's RFP processes, while precluding Dr. Harris from testifying about procurement practices relevant to Fort Schuyler's, would not only confuse the jury, but mislead them.

Aiello and Laipple further argue that Dr. Harris is unqualified to testify as an expert as his resume does not suggest a familiarity with New York specific procurement processes. *See Ex. E.* 2-3 ("[Dr. Harris] does not demonstrate any experience with private procurement in New York or with private, non-profit entities . . . that are established under New York State law specifically to facilitate economic development."); *Ex. F.* 4-5 ("… there is no indication that [Dr. Harris's] procurement experience, public or private, has been focused on New York"). This is yet another attempt by the defense to make relevant a clearly irrelevant issue. In the expert notice the Government provided defense counsel, the Government never claimed that Dr. Harris would be talking about procurement processes, private or otherwise, specific to New York. It simply stated that Dr. Harris would discuss industry practices with respect to public RFPs. (Ex. C. 1). As such, Dr. Harris's experience with New York specific procurement processes is irrelevant to whether he is qualified to give his proffered testimony. The defendants' argument is particularly rich given that it is unclear what experience Aiello's expert has with "non-profit entities . . . that are established under New York State law specifically to facilitate economic development," (Ex. E at 2-3), or what experience Liapple's expert has at all other than the fact that he has purportedly worked at a company called "Associated General Contractors." (Exhibit B. at 1).

In perhaps a last ditch attempt to preclude Dr. Harris's testimony, Aiello and Laipple claim that Dr. Harris also should be precluded from testifying as it does not appear from the Government's notes of its single interview with Dr. Harris that he has reviewed documents specific to this case. *See* Ex. E. at 2 ("The first bullet from the Government's notes indicates that Mr. Harris 'Has not reviewed docs.'"); Ex. F. at 5 ("Mr. Harris apparently has not reviewed any relevant documents."). First, it should not be surprising that in the Government's very first interview with Dr. Harris, Dr. Harris did not come into that interview having already reviewed documents specific to the June Trial. In the event that Dr. Harris will testify about specific documents relevant to this case, he will review those documents before testifying about them. Second, as stated earlier, Dr. Harris's expected testimony concerns industry practices with respect

to RFPs, so his familiarity with documents specific to Fort Schuyler and the RFPs at issue is irrelevant. Finally, in yet another ironic twist, Aiello and Laipple seek to disqualify Dr. Harris for not having reviewed documents specific to this case without having provided a single note indicating what, if anything, their respective expert has reviewed in preparation for his/her testimony.

\* \* \*

In sum, the Government respectfully requests that the Court deny the defendants' motions to preclude the testimony of Dr. Harris, or, in the alternative, that the Court order a *Daubert* hearing to assess the relevance and reliability of Dr. Harris's testimony.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/
Robert Boone/ David Zhou/Matthew Podolsky
Assistant United States Attorneys
(212) 637-2208/2438/1947

cc: Counsel for all defendants (via ECF)