UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                           :

UNITED STATES OF AMERICA      :
                           :

    v.                    :
                           :     Case No.   16-cr-00776 (VEC)

ALAIN KALOYEROS, et al.,    :
                           :

       Defendants.     :
                           :
-------------------------------------------------------x

**DEFENDANT ALAIN KALOYEROS'
PROPOSED FINAL JURY INSTRUCTIONS**

       Defendant Alain Kaloyeros, through counsel, respectfully submits these proposed final jury instructions.   Dr. Kaloyeros reserves the right to submit additional or revised instructions as the case develops.

                         Respectfully submitted,

                         /s/ Reid H. Weingarten
                         Reid H. Weingarten
                         Michael C. Miller
                         Michael G. Scavelli
                         Katherine Dubyak
                         David B. Hirsch
                         STEPTOE & JOHNSON LLP
                         1114 Avenue of the Americas
                         New York, New York 10036
                         (212) 506-3900

                         *Counsel for Alain Kaloyeros*

Dated:   June 15, 2018

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................................. 1

II.  GENERAL INSTRUCTIONS ............................................................................................... 1

  A.   ROLE OF THE COURT ..................................................................................................... 1

  B.   ROLE OF THE JURY ........................................................................................................ 2

  C.   ROLE OF COUNSEL / OBJECTIONS ................................................................................. 3

  D.   COUNSEL COOPERATION ............................................................................................... 3

  E.   SYMPATHY OR BIAS ...................................................................................................... 3

  F.   PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF ................................................. 4

  G.   REASONABLE DOUBT .................................................................................................... 5

  H.   WHAT IS AND IS NOT EVIDENCE ................................................................................... 5

  I.   DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................................... 7

  J.   INFERENCES .................................................................................................................. 8

  K.   NUMBER OF WITNESSES AND UNCONTRADICTED TESTIMONY ...................................... 8

  L.   WITNESS CREDIBILITY .................................................................................................. 9

     1.   General Credibility .............................................................................................. 9

     2.   Cooperating Witness .......................................................................................... 10

     3.   Non-Testifying Witness [If applicable] .............................................................. 11

     4.   Law Enforcement Witnesses [If applicable] ...................................................... 12

     5.   Witness Preparation ........................................................................................... 12

     6.   Conclusion .......................................................................................................... 12

  M.   BIAS OF WITNESSES .................................................................................................... 13

  N.   SUMMARY CHARTS [IF APPLICABLE] .......................................................................... 13

  O.   REDACTIONS AND EXCERPTS [IF APPLICABLE] ........................................................... 14

  P.   PERSONS NOT ON TRIAL .............................................................................................. 14

  Q.   DEFENDANT'S RIGHT NOT TO TESTIFY [IF APPLICABLE] ............................................ 14

III. SUBSTANTIVE INSTRUCTIONS ................................................................................... 15

  A.   INDICTMENT IS NOT EVIDENCE ................................................................................... 15

  B.   MULTIPLE COUNTS / MULTIPLE DEFENDANTS ............................................................ 15

  C.   TWO SEPARATE ALLEGED SCHEMES ........................................................................... 16

  D.   THEORIES OF THE DEFENSE ........................................................................................ 17

E.   COUNTS TWO AND THREE—WIRE FRAUD ........................................................ 17

   1.   Element One – Scheme to Defraud ............................................... 19

   2.   Second Element—Money or Property—the Right to Control Assets.......................... 20

   3.   Third Element—Knowing and Willful Participation in the Scheme ............................ 23

   4.   Element Four—Use of Interstate Wire Communications ............................... 24

F.   COUNT ONE – CONSPIRACY TO COMMIT WIRE FRAUD ...................................... 25

   1.   Element One – Existence of the Conspiracy.................................. 26

   2.   Element Two – Membership in the Conspiracy........................... 27

G.   COUNT FOUR– FALSE STATEMENTS...................................................... 28

   1.   Element One – A Statement .............................................. 28

   2.   Element Two – Materiality .......................................... 29

   3.   Element Three – False, Fictitious, or Fraudulent Statement ................... 29

   4.   Element Four – Knowing and Willful Conduct .......................... 29

   5.   Element Five – Matter Within the Jurisdiction of the United States Government......... 30

H.   DEFENSES TO INTENT ............................................................ 30

IV.   FINAL INSTRUCTIONS ........................................................... 32

A.   RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY; COMMUNICATIONS WITH THE COURT .... 32

B.   NOTES......................................................................... 33

C.   DUTY TO DELIBERATE / UNANIMOUS VERDICT ................................ 33

D.   SELECTING A FOREPERSON AND THE FOREPERSON'S DUTIES ........................... 34

E.   VERDICT FORM AND RETURN OF VERDICT ....................................... 34

F.   EXCEPTIONS.................................................................... 34

G.   OATH ......................................................................... 34

## I.   INTRODUCTION[1]

Members of the jury, you have heard all of the evidence.   I am now going to instruct you on the law that governs the case.   There are three parts to these instructions:

First, I will provide you with some general instructions about your role and about how you are to decide the facts of the case.   These instructions would apply to just about any trial.

Second, I will give specific instructions about the legal rules applicable to this particular case.

Third, I will give you instructions on the general rules governing your deliberations.

I will read most of this.   It's not my favorite way to communicate with a jury, but because there is a need for precision, it's important that I get the words just right, and so that's why I will be reading.

I have provided each of you with a copy of this charge.   If you find it easier to listen and understand while you are reading along, please do so.   If you would prefer, you can just listen. Either way, you will have a copy of the charge with you in the jury room so you can consult it if you want to re-read any portion to facilitate your deliberations.   You will also have in the jury room a verdict form on which to record your verdict.

## II.   GENERAL INSTRUCTIONS

### A.     Role of the Court[2]

It is my duty to instruct you on the law, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant for your consideration.   It is your duty to accept my instructions on the law and to apply them to the facts as you determine them.

---

[1]   Jury Instructions, *United States v. Percoco*, No. 1:16-cr-776-VEC, Doc. 516, Instr. I, at 4 (Feb.   28, 2018) ("*Percoco* Instr.").

[2]   *Percoco* Instr. II.A, at 4-5.

On legal matters, you must take the law as I give it to you.   You may not substitute your own notions or opinions of what the law is or ought to be.   You should not be concerned about the wisdom of any rule that I state.   Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.

If any attorney has stated a legal principle different from what I tell you, you must follow my instructions.   You should not single out any particular instruction as alone stating the law. You should consider my instructions as a whole as you deliberate.

You should not infer from anything I have said or done during this trial that I have any view on the credibility of the witnesses or any view about how you should decide the case.   I have no opinion as to the facts or the verdict that you should render in this case.

**B.      Role of the Jury[3]**

You are the sole and exclusive judges of the facts.   You determine the credibility of the witnesses.   You resolve any conflicts that might exist in the evidence.   You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight to give the various pieces of evidence.

You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.   You may not consider or speculate on matters not in evidence or matters outside the case.

---

[3] *Percoco* Instr. II.B, at 5.

### C.    Role of Counsel / Objections[4]

As I told you at the outset of the case, it is the duty of the attorneys to object when the other side offers testimony or evidence that the attorney believes is not properly admissible.    Therefore, you should draw no inference if an attorney objected to evidence.    Nor should you draw any inference from the fact that I might have sustained or overruled an objection.    You should not consider the conduct of the attorneys, or hold the conduct of the attorneys for or against either party.

### D.    Counsel Cooperation[5]

Each defendant has been represented by his own counsel.    The fact that defense counsel have consulted and cooperated with one another in dividing the work of the trial does not mean you are to consider the defendants together.    You must consider each defendant separately and make individual determinations as to each defendant.

### E.    Sympathy or Bias[6]

You are required to evaluate the evidence calmly and objectively, and you must be completely fair and impartial.    Your verdict must be based solely on the evidence introduced at this trial, or the lack of evidence.    The parties in this case are entitled to a trial free from prejudice or bias for or against either side.    Our judicial system works only if you reach your verdict through a completely fair and impartial consideration of the evidence.

In deciding the facts of the case, it would be improper for you to consider any personal feelings you may have about any party or any witness, including feelings about race, religion,

---

[4] *Percoco* Instr. II.C, at 5.   The last sentence is added from 1 L. Sand et al., Modern Federal Jury Instructions (Crim.) ("Sand"), Instr. 2-8, second paragraph.

[5] Adapted from Sand Instr. 2-10 (Counsel Cooperation).

[6] *Percoco* Instr. II.D, at 5-6.   In the second paragraph, the phrase, "including feelings about race, religion, national origin, sex, age" is added from Sand Instr. 2-11 (Improper Considerations—Race, Religion, National Origin, Sex or Age).

national origin, sex, age, or any other irrelevant factor.   This case must be decided by you as an action between parties of equal standing in the community and of equal worth.   All parties are entitled to the same fair trial.   The Government and the Defendants stand as equals before the law and are to be dealt with as equals in this Court.

### F.       Presumption of Innocence and Burden of Proof[7]

The Defendants—Alain Kaloyeros, Steven Aiello, Joseph Gerardi, and Louis Ciminelli—are each charged with several federal crimes about which I will instruct you shortly. Please bear in mind, however, that the charges are not evidence of anything.   Each Defendant is presumed innocent.

The Defendants have pleaded not guilty.   The Government has the burden of proving each essential element of each charge as to each Defendant beyond a reasonable doubt.   If the Government succeeds in meeting its burden as to a particular Defendant on a particular charge, your verdict must be guilty as to that Defendant on that charge; if it fails, your verdict must be not guilty as to that Defendant on that charge.   The burden of proof never shifts to the Defendants. The law presumes each Defendant to be innocent and therefore never imposes upon a Defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

In other words, as to each charge, each Defendant starts with a clean slate and is presumed innocent until such time, if ever, that you as a jury are satisfied that the Government has proven, beyond a reasonable doubt, that he is guilty of that crime.

---

[7] *Percoco* Instr. II.E, at 6.   In the second sentence, "a charge is" has been changed to "the charges are," to particularize the instruction to the charges in this case.

### G.        Reasonable Doubt[8]

The question then becomes: what is a reasonable doubt?

The words almost define themselves.   It is a doubt based upon reason and common sense.
It is a doubt that a reasonable person has after carefully weighing all of the evidence.   It is a doubt
that would cause a reasonable person to hesitate to act in a matter of importance in his or her
personal life.   Proof beyond a reasonable doubt must, therefore, be proof that is so convincing that
a reasonable person would not hesitate to rely upon it in making an important decision.

Proof beyond a reasonable doubt is not, however, proof beyond all possible doubt.   A
reasonable doubt is not a doubt based on caprice or whim.   Nor is it a doubt based on speculation
or suspicion.   Reasonable doubt is also not an excuse to avoid the performance of an unpleasant
duty.

If, after fair and impartial consideration of the evidence, you have a reasonable doubt as to
a Defendant's guilt as to a particular charge against him, then you must find him not guilty on that
charge.   On the other hand, if after fair and impartial consideration of all the evidence, you are
satisfied beyond a reasonable doubt of a Defendant's guilt as to a particular charge, then you must
find him guilty of that charge.

### H.        What Is and Is Not Evidence[9]

I want to take a moment to describe to you what is and is not evidence in this case.   As I
have said, you must rely only on evidence in your deliberations.   The evidence in this case is the

---

[8] *Percoco* Instr. II.F, at 7.

[9] Adapted from *Percoco* Instr. II.G, at 7-9.   In the list of what is not evidence, we have
added #6, that the indictment is not evidence.   In the paragraph addressing stipulations, after the
instruction that it is up to the jury to determine the weight or importance of stipulated testimony,
we have added it is also up to the jury to determine the credibility of that testimony as well.   The
last paragraph, addressing judicial notice (if applicable), is from Sand Instr. 5-5 (Judicial Notice).

sworn testimony of the witnesses, the exhibits, and the stipulations that were received in evidence. Other things are not evidence.

1.      A question by a lawyer is not evidence.   The witnesses' answers are evidence, not the questions.   Similarly, documents that lawyers provided to witnesses to refresh their recollections are not evidence; only the witnesses' answers are evidence.

2.      Arguments by lawyers are not evidence.   What the attorneys said in their opening statements and in their summations was intended to help you understand the evidence and to reach a verdict.   If your recollection of the facts differs from the attorneys' statements, it is your recollection that controls.

3.      Statements that I may have made concerning the evidence are not evidence.

4.      Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.      Anything you may have seen or heard outside the courtroom is not evidence.

6.      The indictment is not evidence.

Now I will discuss what is evidence.   Evidence may come in several forms:

1.      The sworn testimony of witnesses, regardless of who called the witness, is evidence.   This is true of the witnesses' answers on both direct and cross examination.

2.      The exhibits that were admitted during the trial are evidence.   You will recall that a number of documents were admitted not for the truth of whatever the document said but for some other purpose.   During your deliberations, if you are unsure whether a particular exhibit was admitted for its truth, do not hesitate to send me a note asking for clarification.

3.      The stipulations that both parties agreed to and read during the trial are evidence. You must accept as true the facts to which the parties stipulated.   Some of the stipulations were

6

about what a witness would have said if he or she had been called to testify.   You must accept as true the fact that the witness would have given that testimony, but it is up to you to determine the weight or importance of that testimony, or the credibility of that witness.

**[If applicable:]**   Finally, I have taken judicial notice of certain facts that I believe are not subject to reasonable dispute.   I have accepted these facts to be true, even though no evidence has been introduced proving them to be true.   You may, but are not required to, agree that these facts are true.

## I.      Direct and Circumstantial Evidence[10]

Generally, there are two types of evidence that you may consider in reaching your verdict—direct and circumstantial.   Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses—something that he or she has done, seen, felt, touched, or heard.   For example, if a witness testified that on the day in question she was in her office, and she could see that it was raining all day, then that would be direct evidence about the weather on that day.

Circumstantial evidence is evidence of one fact from which you may infer the existence of other facts.   For example, assume that a witness testified that his office does not have a window. On the day in question, however, he saw numerous people coming into the office with wet raincoats and carrying dripping umbrellas.   That testimony about the wet raincoats and dripping umbrellas is circumstantial evidence that it was raining that day.   So even though you have no direct evidence regarding the weather, you have circumstantial evidence that it was raining.

With circumstantial evidence, you must be careful to draw reasonable inferences that reflect all of the evidence.   For example, if you live in the city and wake up in the morning and see

---

[10] *Percoco* Instr. II.H, at 9-10.

that the sidewalk is wet but the street is dry, it is not reasonable to infer that it rained last night. Instead, a more reasonable inference is that the building staff has hosed down the sidewalk.

That is all there is to circumstantial evidence.   You infer on the basis of reason and common sense from one fact (in my first example, dripping raincoats and umbrellas) the existence or non-existence of some other fact (in that case, rainy weather).   When circumstantial evidence is presented, it is of no less weight than direct evidence.

### J.    Inferences[11]

I have used the terms "infer" and "inference," and the attorneys [have/will] ask[ed] you to infer, from one or more established facts, the existence of some other fact.

An inference is not a suspicion, guess, or speculation.   It is a reasoned, logical decision to conclude that a disputed fact exists based on another fact that you know exists.   In drawing inferences, you should use your reason, experience, and common sense.   You are permitted, but not required, to draw, from facts that you find to be proven, such reasonable inferences as you find justified.   It is for you, and you alone, to decide what inferences you will draw.

Here again, let me remind you that, whether based on direct or circumstantial evidence, or on logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of a defendant beyond a reasonable doubt before you may convict.

### K.    Number of Witnesses and Uncontradicted Testimony[12]

The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses.   You should keep in mind that the burden of proof is always on the government and the

---

[11] Condensed from Sand Instr. 6-1 (Inferences Defined); *see also* Jury Charge Tr. 1124-25, *United States v. Davis*, No. 1:13-cr-923-LAP (Doc. 88) (Sept. 1, 2016) ("*Davis* Charge").

[12] Adapted from Sand Instr. 4-3 (adapted for multiple defendants).

defendants are not required to call any witnesses or offer any evidence, since they are presumed to be innocent.

By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible.   You also have to decide which witnesses to believe and which facts are true.   To do this you must look at all the evidence, drawing upon your own common sense and personal experience.

**L.     Witness Credibility**

**1.  General Credibility**[13]

You have had the opportunity to observe the witnesses.   You are the sole judges of the credibility of each witness and of the importance of his or her testimony.   Decide what testimony to believe and what not to believe.   Consider: each witness's demeanor and manner of testifying; the witness's opportunity to see, hear, and know about the events described; the witness's ability to recall and describe those things; and the reasonableness of the testimony in light of all the other evidence in the case.   Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what the witness said or did on a prior occasion, by the testimony of other witnesses, or by other evidence.

If you find that a witness has willfully testified falsely as to an important matter, you may disregard the witness's entire testimony, or you may accept as much of his or her testimony as you find to be true and disregard what you find to be false.   Similarly, if you find that a witness has

---

[13]   Adapted from *Percoco* Instr. II.I.1, at 10.   In the second paragraph, after the sentence regarding findings of false testimony, we propose omitting the sentence, "A witness may have been mistaken or may have lied in part of his or her testimony while having been accurate and truthful in other parts" as unnecessary, and more appropriate for advocacy by counsel than instruction by the Court.   We propose adding a parallel sentence regarding any findings of forged documents, which we submit will become relevant based on the trial record.

forged documents or emails, you may disregard those documents or emails, or you may accept as much of them as you find to be genuine and true, and disregard what you find to be forged or false.

### 2.   Cooperating Witness[14]

You have heard evidence from a cooperating witness, Kevin Schuler, and heard evidence about his Cooperation Agreement with the Government.   The Government is permitted to enter into these kinds of agreements and is entitled to call cooperating witnesses.   You may consider evidence from such a witness in deciding whether the government has proved a defendant's guilt beyond a reasonable doubt.[15]

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from that of an ordinary witness.   A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely.   Therefore, you should examine his testimony with great care and caution.   You should look at all of the evidence and decide what credence and what weight, if any, to give to his testimony.   You should ask yourselves whether he would benefit more by lying or by telling the truth.   Did Mr. Schuler believe that his interests would be best served by testifying truthfully or falsely?   If you believe that Mr. Schuler was motivated by hope of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony?[16]

---

[14]  Adapted from *Percoco* Instr. II.I.2, at 10-11

[15]  Dr. Kaloyeros objects to the *Percoco* instruction that the jury may convict based on a cooperating witness's testimony alone, as argumentative and suggestive of guilt.

[16]  The added language is adapted from Sand Instructions 7-9 and 7-11; *see also Banks v. Dretke*, 540 U.S. 688, 701-02 (2004) (approving similar pattern instructions in the First, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits).   In *Banks*, the Supreme Court emphasized it had long recognized "the 'serious questions of credibility' informers pose," and the need for "customary, truth-promoting precautions that generally accompany the testimony of informants."   *See also On Lee v. United States*, 343 U.S. 747, 757 (1952); *United States v. Bernal-Obeso*, 989 F.2d 331, 333

You also heard testimony that Mr. Schuler pled guilty to certain crimes that are related to the allegations in this case.   You are not permitted to draw conclusions or inferences of any kind about the guilt of any of the Defendants on trial from the fact that Mr. Schuler pled guilty. Mr. Schuler's decision to plead guilty was a personal decision by him about his own guilt.   It may not be used by you in any way as evidence against any of the Defendants on trial.

### 3.   Non-Testifying Witness [If applicable][17]

You have also heard and seen evidence of out-of-court statements and e-mails from a witness who did not testify in court, Todd Howe.   When out-of-court statements are admitted from a witness who did not testify in court, you should evaluate the credibility of those statements just as you do for witnesses who testify before you.   You may consider evidence of that witness's prior inconsistent statements, criminal record, and prior dishonest behavior in determining whether the statements attributed to that witness are credible.

You have heard evidence that Mr. Howe also entered into a Cooperation Agreement with the Government, and pled guilty to certain crimes.   I just instructed you regarding the special caution and care with which you should evaluate the testimony of a witness who has a cooperation agreement.   I also instructed you that you may not consider in any way a witness's plea about his own guilt as evidence against any of the Defendants on trial.   Those instructions apply equally to your consideration of evidence from Mr. Howe.

---

(9th Cir. 1993) ("By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom.").

[17] *See* Fed. R. Evid. 806; *see* Dr. Kaloyeros' Letter Brief regarding Impeachment of Non-Testifying Declarant Under Rule 806 (Doc. 715) (June 8, 2018).

### 4.   Law Enforcement Witnesses [If applicable][18]

You have also heard the testimony of law enforcement witnesses.   The fact that a witness is employed as a law enforcement official or government employee does not mean that his or her testimony is deserving of more or less consideration, or greater or lesser weight, than that of a witness who is not employed by law enforcement.

### 5.   Witness Preparation[19]

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the Government before the witnesses appeared in court.   Although you may consider that fact when you are evaluating a witness's credibility, there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.   Such consultation helps conserve your time and the Court's time.

### 6.   Conclusion[20]

Going back to witnesses generally, you should consider whether a witness had an opportunity to observe the facts he or she testified about.   You should also consider whether the witness's recollection of the facts stands up in light of the other evidence in the case.   In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter in your own life where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

---

[18] *Percoco* Instr. II.I.3, at 11.

[19] *Percoco* Instr. II.I.4, at 11.

[20] *Percoco* Instr. II.I.5, at 12.

### M.    Bias of Witnesses[21]

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have had for or against a Defendant.   Likewise, you should consider evidence of any other interest or motive that the witness may have had in cooperating with or helping either party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.   If you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean the witness has not told the truth.   It is for you to decide from your observations, applying your common sense and experience, and all the other considerations mentioned, whether the possible interest of a witness has intentionally or otherwise colored or distorted the witness's testimony.   You are not required to believe or disbelieve an interested witness; you may accept as much of the testimony as you deem reliable and reject as much as you deem unworthy of belief.

### N.    Summary Charts [If applicable][22]

Some of the exhibits admitted into evidence were in the form of charts and summaries. These exhibits purport to summarize the underlying evidence that was used to prepare them. They are not better evidence than the testimony or the documents upon which they are based.   I decided to admit these charts and summaries in order to save time.   You should consider these charts and summaries as you would any other evidence.

There have also been a number of documents that were shown to you but not themselves admitted into evidence.   Those exhibits were shown to you to make the evidence more

---

[21] *Percoco* Instr. II.J, at 12.

[22] *Percoco* Instr. II.L, at 13.

13

meaningful and to aid you in considering the evidence.   They are not, however, evidence in themselves and will not be sent into the jury room.   They are merely graphic demonstrations of underlying evidence.

### O.      Redactions and Excerpts [If applicable][23]

Among the exhibits admitted into evidence were documents that were redacted.

"Redacted" means that part of the document was removed or blacked out.   You are to concern yourself only with the part of the item that has been admitted into evidence.   You should not consider any possible reason why the remainder has been redacted or speculate as to what may have been redacted that was not introduced into evidence.

### P.      Persons Not on Trial[24]

Some of the people who may have been involved in the events at issue in this trial are not on trial.   You may not draw any inference, favorable or unfavorable, toward the Government or the Defendants from the fact that persons other than the Defendants were not named as Defendants in the Indictment.   In addition, you may not speculate as to the reasons why such persons are not Defendants in this trial.   Those matters are wholly outside your concern and have no bearing on your function as jurors.

### Q.      Defendant's Right Not to Testify [If applicable][25]

Under our Constitution, a Defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a Defendant's guilt beyond a reasonable doubt.   A Defendant is never required to prove that he is not guilty.

---

[23] *Percoco* Instr. II.M, at 13-14.

[24] *Percoco* Instr. II.N, at 14.

[25] *Percoco* Instr. II.O, at 14.   In the last sentence, we have omitted "adverse" from "inference," as unnecessary in light of "against any Defendant."

In this case, **[**Defendant(s) [**NAMES]]** did not testify.   You must not attach any significance to that fact.   You may not draw any inference against any Defendant because he did not testify, and you may not consider it against any Defendant in any way during your deliberations.

## III.   SUBSTANTIVE INSTRUCTIONS

### A.  Indictment is Not Evidence[26]

The Defendants are charged in an Indictment.   Each charge is called a "count."   You will have the Indictment with you in the jury room, but the Indictment itself is not evidence of anything.   It is merely a set of accusations.

### B.       Multiple Counts / Multiple Defendants[27]

The Indictment contains four counts.   Each count has a number, but there is no significance to the order of the counts or the number of counts charged.   Each count charges at least one Defendant with a crime, but not every Defendant is charged in every count.   You must consider each count and each Defendant separately.   You will be required to return a separate verdict for each Defendant on each count in which he is charged.

In reaching your verdict, bear in mind that guilt is personal and individual.   Your verdict as to each Defendant must be determined separately with respect to him, solely on the evidence (or lack of evidence) presented against him, without regard to the guilt or innocence of anyone else. Your verdict as to any Defendant on any count should not control your decision as to any other Defendant or any other count.

---

[26] *Percoco* Instr. III.A, at 14.

[27] *Percoco* Instr. III.B, at 14-15.

15

**[If applicable:]**   In addition, much of the evidence in this case was admitted against solely one or more specific defendants.   Any evidence admitted solely against one or more specific defendant(s) may be considered only as against [that/those] specific defendant(s), and may not in any respect enter into your deliberations on any other defendant.[28]

Each defendant has denied that he is guilty of these charges.   The defendants are not charged with committing any crime other than the offenses contained in the indictment.   Each defendant contends that he acted in good faith at all times.   Good faith is an absolute defense to the charges.[29]

### C.      Two Separate Alleged Schemes[30]

As I have instructed you throughout the trial, the Indictment alleges two separate schemes: one involving COR Development (the "Syracuse RFP"), and one involving LPCiminelli Inc. (the "Buffalo RFP").   Dr. Kaloyeros is charged in both alleged schemes.   Mr. Aiello and Mr. Gerardi are charged only with respect to the Syracuse RFP.   Mr. Ciminelli is charged only with respect to the Buffalo RFP.

Remember that some of the evidence in this case was admitted solely to prove the alleged Syracuse RFP scheme, and some of the evidence was admitted solely to prove the alleged Buffalo RFP scheme.   Other evidence was admitted to prove both alleged schemes.   The evidence that was admitted solely to prove the alleged Syracuse RFP scheme may not be considered against

---

[28]  If "other acts" are admitted, Dr. Kaloyeros requests that the full "other acts" charge, found in 1 Sand et al., Modern Federal Jury Instructions (Crim.), Instr. 3-3, be given.

[29]  Because the instructions set out the Government's charges, and the jury will have the indictment, a statement that Defendants have denied guilt is appropriate for evenhandedness.   The statement that the defendants are not charged with any crimes other than those contained in the indictment is adapted from Sand Instr. 3-3 (Consider Only the Charges).

[30]  Adapted from *Percoco* Instr. III.C, at 15, and Trial Indictment ¶¶ 24, 26 (Doc. 716-1).

Mr. Ciminelli, and the evidence that was admitted solely to prove the Buffalo RFP Scheme may not be considered against Mr. Aiello or Mr. Gerardi.

**D.      Theories of the Defense**

**[To be submitted at the close of the evidence.]**

Remember, although the Defendants have argued these theories as defenses, they have no burden to prove anything—the burden of proof always remains with the Government.

**E.      Counts Two and Three—Wire Fraud**

As I indicated, the order of the counts in the Indictment is not important.   To that end, my instructions will start with Counts Two and Three, and then I will back up to Count One.[31]

In Count Two, the Government charges that Dr. Kaloyeros, Mr. Aiello, and Mr. Gerardi committed wire fraud in connection with the Syracuse RFP, by devising a scheme to defraud Fort Schuyler, a private not-for-profit entity, of the right to control its assets, thereby exposing Fort Schuyler to risk of economic harm, in the bidding process for the Syracuse Preferred Developer, by representing to Fort Schuyler that the bidding process for the Syracuse Preferred Developer was fair, open, and competitive, when, according to the Government's charge, Dr. Kaloyeros and Todd Howe, in collaboration and in concert with Mr. Aiello and Mr. Gerardi, used their official positions to secretly tailor the RFP so that COR Development, which was owned, controlled and managed by Mr. Aiello and Mr. Gerardi, would be favored to win in the selection process.[32]

In Count Three, the Government charges that Dr. Kaloyeros and Mr. Ciminelli committed wire fraud in connection with the Buffalo RFP, by devising a scheme to defraud Fort Schuyler of the right to control its assets, thereby exposing Fort Schuyler to risk of economic harm, in the bidding process for the Buffalo Preferred Developer, by representing to Fort Schuyler that the

---

[31]  Adapted from *Percoco* Instr. III.E, at 16-17, first paragraph.

[32]  Trial Ind. at 12, ¶ 25.

bidding process for the Buffalo Preferred Developer was fair, open, and competitive, when, according to the Government's charges, Dr. Kaloyeros and Todd Howe, in collaboration and in concert with Mr. Ciminelli, used their official positions to secretly tailor the RFP so that LP Ciminelli Inc., which was owned, controlled and managed by Mr. Ciminelli, would be favored to win in the selection process.[33]

Because Counts Two and Three are both based on the same offense, namely, wire fraud involving the right to control assets, I will explain at the same time the law applicable to both counts.

To sustain its burden of proof as to each Defendant on Counts Two and Three, the Government must prove beyond a reasonable doubt:

First, the existence of the scheme to defraud charged in the Count of the indictment you are considering;

Second, money or property as the object of the scheme;

Third, that the defendant you are considering knowingly and willfully participated in the scheme to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

Fourth, that in execution of that scheme, the defendant you are considering transmitted or caused to be transmitted interstate email and telephonic communications as charged in that count.[34]

---

[33] Trial Ind. at 13, ¶ 27.

[34] *See United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) ("The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.") (quoting *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004)); *accord United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (same); Order and Opinion at 12, Doc. 390 (Dec. 11, 2017) (same) (quoting *Binday* and *Fountain*); *United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994) (quoting *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991)); *see also* Sand Instrs. 44-3 (Mail or Wire Fraud, Elements of the Offense), Comment at 44-6 (noting Second Circuit breaks out money or property as separate element); Sand Instrs. 44-3 (Elements of the Offense), 44-5 (Participation in Scheme With Intent) (breaking out participation with intent as a separate element); Jury Instructions,

### 1.   Element One – Scheme to Defraud[35]

The first element that the government must prove beyond a reasonable doubt is the existence of the scheme or artifice to defraud Fort Schuyler of the right to control money or property by means of false or fraudulent pretenses, representations or promises that is charged in the Count you are considering.

A "scheme or artifice" is simply a plan to accomplish some goal.   For ease of reference, I am going to just use the word "scheme."   A scheme to defraud is any scheme to deprive another of money or property by means of false or fraudulent representations reasonably calculated to deceive persons of average prudence.

Here, the charged scheme to defraud is alleged to have been carried out by making false statements or representations: namely, by representing to Fort Schuyler that the bidding process for the Syracuse and Buffalo Preferred Developers was fair, open, and competitive, when, according to the Government's charges, Defendants allegedly secretly tailored the RFPs so that COR Development and LP Ciminelli Inc. would be favored to win the selection process.   A representation is false if it is untrue when made and was known at the time to be untrue by the person making the representation or causing it to be made.   A representation is fraudulent if it was falsely made with the intent to deceive.

The false or fraudulent representation or concealment must relate to a material fact.   I will instruct you further on materiality in connection with the charged theory of money or property in this case, namely, Fort Schuyler's right to control its assets.

---

*United States v. Silver*, No. 1:15-cr-93-VEC, Instrs. III.B (at 14), III.B.2 (at 16-17) (Doc. 135-3) (Nov. 24, 2015) ("*Silver* Charge.") (same).   .

[35] Adapted from 3 L. Sand et al., Modern Federal Jury Instructions (Crim.), Instr. 44-4 (First Element—Existence of a Scheme or Artifice to Defraud); *Silver* Charge, note 34, *supra*, Instr. III.B.1, at 15; and *Davis* Charge, note 11, *supra*, at Tr. 1132-34.

## 2.   Second Element—Money or Property—the Right to Control Assets[36]

The second element the government must prove beyond a reasonable doubt is that the

object of the scheme was money or property.   Here, the indictment charges that Defendants

sought to deprive Fort Schuyler of its right to control its assets, specifically, its right to control

whether to enter into potential future development contracts, and thereby exposed Fort Schuyler to

risk of economic harm.[37]

---

[36] This instruction is based on Second Circuit case law defining and limiting the "right to control assets" theory of money or property.   Each sentence is cited for its source in Second Circuit case law.

Defendants continue to maintain, as argued in earlier briefing, that the Second Circuit's "right to control" theory, at least at its outer limits, is inconsistent with Supreme Court precedents including *McNally v. United States*, 483 U.S. 350, 354 n.3, 360-61 (1987) (holding that "conduct [was] not within the reach of § 1341" because failure to disclose all facts relevant to election of workers compensation insurance contractor did not constitute deprivation of money or property absent proof that state would have paid lower premium or received better insurance), *Cleveland v. United States*, 531 U.S. 12, 24 (2000) (unanimously holding that deceiving a state agency into issuing a valuable video poker license did not deprive the agency of money or property); and *Sekhar v. United States*, 570 U.S. 729, 737 (2013) (holding that extorting state government employee's recommendation regarding future transaction did not constitute obtaining property). Mem. of Law in Supp. of Def. Alain Kaloyeros' Mot. to Dismiss Under Fed. R. Crim. P. 12 at 11-13 (Doc. 177) (May 19, 2017) ("MTD"); Reply Mem. of Law in Supp. of Def. Alain Kaloyeros' Mot. to Dismiss Under Fed. R. Crim. P. 12 at 3-4 (Doc. 286) (July 21, 2017) ("Reply"). This Court has disagreed.   To preserve that legal position for further review, Dr. Kaloyeros submits an alternative "money or property" instruction as an addendum, and requests that the Court give that instruction in place of the above instruction.   By submitting a proposed instruction that comports with the Second Circuit's "right to control" jurisprudence and this Court's rulings, Dr. Kaloyeros does not waive his position that the theory is inconsistent with Supreme Court jurisprudence, or his request for the instruction contained in the addendum.

[37] *See* Trial Ind. ¶¶ 25, 27.   As discussed at the pretrial hearing on June 6, 2018, the Indictment charges deprivation of the right to control the *preferred developer awards*, Trial Ind. at 10, 12, 13 (Counts One, Two, and Three concerning the RFPs) (Doc. 716-1) (June 9, 2018); *see also id.* ¶¶ 9, 12, 15-17.   Defendants maintain that charge is legally deficient, because those awards were not money or property.   *See* 6/6/2018 Tr. at 116-19; MTD at 11-13; Reply at 3-4. Defendants maintain, and do not waive, their contention that the right to control entry into the later design and construction contracts is not charged in the Indictment.

Nonetheless, Defendants submit the above sentence regarding the future development contracts based on the Court's ruling that they will be tried for an alleged scheme to defraud Fort Schuyler of its right to control entry into the consequent construction contracts.   Defendants

A person can be deprived of money or property when he is deprived of the ability to make an informed economic decision about what to do with his money or property.   That is referred to as being deprived of the right to control money or property.[38]   However, not every misrepresentation that could affect someone's decision of how to use his or her assets is sufficient to support a wire fraud conviction.[39]   The loss of the right to control money or property constitutes deprivation of money or property only when the scheme, if it were to succeed, would result in economic harm to the victim.[40]   This economic harm can be manifested directly—such as by increasing the price the victim paid for something—or indirectly—such as by providing the victim with something lower-quality than it otherwise would have received.[41]   In short, the misrepresentation must affect an essential element of the bargain—it must affect the company's economic calculus, or the benefits and burdens of the agreement.[42]   If the company received, and was intended to receive, the full economic benefit of its bargain, that is not wire fraud.[43]   Thus, if all the government proves is that under the scheme Fort Schuyler entered into transactions that it otherwise would not have entered into, without proving that it would thereby have suffered some economic harm, then

---

reiterate their request that the jury be instructed that the charged object of the scheme was control of the preferred developer RFPs, *see, e.g.*, 6/6/18 Tr. at 116-19; *cf.* MTD at 7 (noting that the only alleged harm ceased after the preferred developer stage and before the ultimate development contracts), and do not intend to waive any argument based on that charge by submitting the above language in an attempt to comply with the Court's June 6 ruling.

[38] *United States v. Binday*, 804 F.3d 558, 581 (2d Cir. 2015).

[39] *United States v. Finazzo*, 850 F.3d 94, 111 (2d Cir. 2017) (citing *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994).

[40] *Binday*, 804 F.3d at 581 (quoted in *Finazzo*, 850 F.3d at 110).

[41] *Finazzo*, 850 F.3d at 111 (citing *Mittelstaedt*, 31 F.3d at 1217).

[42] *Binday*, 804 F.3d at 570; *Shellef*, 507 F.3d at 108.

[43] *Binday*, 804 F.3d at 570; *see also Shellef*, 507 F.3d at 108; *Mittelstaedt*, 31 F.3d at 1217; *United States v. Starr*, 816 F.2d 94, 96 (2d Cir. 1987) (no fraud against bulk mail customers where they "received exactly what they paid for" and "there was no discrepancy between benefits 'reasonably anticipated' and actual benefits received") (quoted in *Binday*, 804 F.3d at 570 n.10).

the government will not have met its burden of proof.[44]    The mere possibility that Fort Schuyler *might* have paid less is not enough; the Government must prove beyond a reasonable doubt that the alleged misrepresentation prevented Fort Schuyler from negotiating a better bargain, or that it did not get the product it bargained for.[45]

It is not necessary for the government to prove that Fort Schuyler actually lost money or property as a result of the scheme.    Such a loss must, however, have been intended by the defendant you are considering.[46]    It is not enough for Defendants to have recognized the possibility that the alleged scheme would result in economic loss; they must have *intended* to cause such economic loss.[47]

In a right-to-control case, to be economically material, the information misrepresented either must be of some independent value or must bear on the ultimate value of the transaction. To convict, the government must establish that the misrepresentation caused (or was intended to

---

[44] *Binday*, 804 F.3d at 581 (quoted in *Finazzo*, 850 F.3d at 110); *accord Mittelstaedt,* 31 F.3d at 1217 ("[L]ack of information that might have an impact on the decision regarding where government money is spent, without more, is not a tangible harm and therefore does not constitute a deprivation of section 1341 'property.'") .

[45] *See United States v. Jabar*, No. 09-CR-170, 2017 WL 4276652, at *9 (W.D.N.Y. Sept. 27, 2017) (holding that misrepresentations did not deprive the UN of its right to control its property, because the Government failed to prove 'that the defendants' non-disclosures prevented the UN from negotiating a better bargain on a radio station' and the UN 'ended up wit what it bargained for-an Iraqi radio station"); *Starr*, 816 F.2d at 96 (finding no mail fraud where customers paid the correct postage, "mail was sent on time and arrived at the appropriate destination," and customers "testified at trial that they were satisfied with the service they received" from bulk mailer);.

[46] *Binday*, 804 F.3d at 581.

[47] *See United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir. 1994) ("A person charged with mail fraud under the right to control theory must intend to injure the person or entity misled …."); *United States v. Gabriel*, 125 F.3d 89, 97 (2d Cir. 1997) (holding "contemplated harm" means "intended harm," and mere "recognition of [a scheme]'s capacity to cause harm to the victims of [its] deception" is not enough to sustain a conviction).

cause) actual harm to Fort Schuyler of a pecuniary (*i.e.*, monetary) nature, or that Fort Schuyler could have negotiated a better deal for itself if it had not been deceived.[48]

### 3.   Third Element—Knowing and Willful Participation in the Scheme[49]

The third element that the Government must prove, beyond a reasonable doubt, is that the defendant participated in the scheme to defraud knowingly, willfully, and with a specific intent to defraud.   This element involves the defendant's state of mind, which is a question of fact for you to determine, like any other fact question.   "Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.   "Willfully" means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law.   "Intent to defraud" means to act knowingly and with the specific intent to deceive for the purpose of depriving another of money or property, as I have instructed you.

Direct proof of knowledge and fraudulent intent is almost never available.   You cannot look into a person's mind to see what his or state of mind is or was, and it is the rare criminal scheme where the participants write down or state expressly that they are acting with fraudulent intent.   Such direct proof of knowledge and intent is not required.

In our everyday affairs, we are continuously called upon to decide from the actions of others what they intend and what their state of mind is.   Experience has taught us that, frequently, actions speak louder and more clearly than spoken or written words.   Therefore, the ultimate facts of knowledge and criminal intent are frequently established by circumstantial evidence, based

---

[48] *Mittelstaedt*, 31 F.3d at 1217; *see Finazzo*, 850 F.3d at 109 & n.16.   .

[49] Adapted from *Silver* Charge, note 34, *supra,* Instr. III.B.2, at 16-17; *see also United States v. Carlo*, 507 F.3d 799, 801 (2d Cir. 2007) (the government must prove that the defendant acted "with specific intent to obtain money or property by means of a fraudulent scheme that contemplated harm to the property interests of the victim") (quoted in Opinion and Order at 12, Doc. 390) (December 11, 2017)).

upon what a person does and says, what he does not say and does not do, all the surrounding

circumstances, and the rational or logical inferences that may be drawn from them.   As I charged

previously, circumstantial evidence is of no less value than direct evidence.

Because intent to defraud is an element of the crime, it follows that good faith on the part of

any defendant is a complete defense to a charge of wire fraud.   The defendants have no burden to

establish good faith.   The burden is on the Government to prove fraudulent intent and the

consequent lack of good faith beyond a reasonable doubt.

### 4. Element Four—Use of Interstate Wire Communications[50]

For Counts Two and Three, the wire fraud counts, the final element that the Government

must prove, beyond a reasonable doubt, is the use of interstate wire communications to further the

scheme to defraud.   The wire communication, such as a telephone call or an e-mail transmission,

must pass between two or more states.

The wire communication must have been transmitted in the Southern District of New

York.   The Southern District of New York includes all of Manhattan and the Bronx, as well as

Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan Counties.[51]

---

[50]  Adapted from *Silver* Charge, note 34, *supra*, Instr. III.B.4, at 19-20 (wire fraud counts).

[51]*See United States v. Ramirez*, 420 F.3d 134, 144-45 (2d Cir. 2005).   *Ramirez*, a mail fraud prosecution, held that "defining the proper venue of a crime requires identifying where the physical '*conduct*' constituting the offense' took place," and that a scheme to defraud "is not an essential *conduct* element."   The *conduct* constituting mail fraud is the mailing—the "overt *act* of putting a letter into the post office."   *Id.* (quoting *Badders v. United States*, 240 U.S. 391, 393 (1916)) (emphasis in original); *see also United States v. Brennan*, 183 F.3d 139, 144-45 (2d Cir. 1999) (noting the act constituting the crime is determined by "the key verbs which define the criminal offense in the statute," and that in the mail fraud statute, the acts are "plac[ing] (or caus[ing] to be placed" items in the mail, "receiv[ing]" such mail, or "knowingly caus[ing] such mail to be delivered" in the district).   Though *Brennan* left open whether venue could be based on "scheme to defraud" conduct apart from the mailing, *see id.* at 145, *Ramirez* answered that question in the negative, and held that venue depends on the locus of the mailing.   *Ramirez*, 420 F.3d at 144-45.

The mail fraud and wire fraud statutes use the same relevant language, and are analyzed in

The wire communication need not itself be fraudulent, but the Government must prove that the wire communication was used in some way to further or advance the scheme to defraud.

It is not necessary that the defendant you are considering be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant you are considering is accused of participating.

The Indictment specifies the types of telephone calls or emails that it alleges satisfy this element in paragraph 18.   The Government has provided the defendants with lists specifying the particular telephone calls and e-mails that it alleges satisfy this element.   These lists will be provided to you in the jury room.   As to Counts Two and Three, in order to find this element satisfied for the defendant you are considering, you must unanimously agree that at least one particular wire communication described in Indictment Paragraph 18 and set forth in these lists satisfies this element for that count.   You must be unanimous on which wire communication the Government has proven, beyond a reasonable doubt, but you only need to find one wire communication for each count.

### F.      Count One – Conspiracy to Commit Wire Fraud[52]

Now let's go back to Count One, which charges the defendants with conspiracy to commit wire fraud.   In order to sustain its burden of proof on this charge, for each defendant, the Government must prove the following two elements beyond a reasonable doubt:

First, that the charged conspiracy existed; and

---

the same way.   *Binday*, 804 F.3d at 569 (quoting *United States v. Schwartz*, 924 F.2d 410 416, (2d Cir. 1991)).   In the wire fraud statute, the key terms defining the prohibited conduct are "transmits or causes to be transmitted" an interstate wire communication.   18 U.S.C. § 1343.   Under *Ramirez*, venue depends on the place of the transmission of the wire communication.

[52] Adapted from *Percoco* Instr. III.F, at 21.

Second, that the defendant knowingly and intentionally became a member of the conspiracy with the intent to accomplish its unlawful purpose.

### 1. Element One – Existence of the Conspiracy[53]

The first element is the existence of a conspiracy, the goal of which was to commit wire fraud in connection with the Preferred Developer RFPs.[54]   This element has two parts: (a) an agreement and (b) an illegal goal.

#### (i)      Agreement

Starting with the first part of Element One: a conspiracy is just an agreement.   To meet its burden of proof on this element, the Government must prove that there was an agreement between two or more people to commit wire fraud.

The Government is not required to prove that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out who would do what in order to carry out the unlawful project.   It is enough if two or more people, in some way or manner, expressly, impliedly, or tacitly, came to an understanding to violate the law.

#### (ii)      Illegal Goal

The second part of Element One is an illegal goal.   The Government alleges that the goal of this conspiracy was to commit the wire fraud offenses charged in Counts Two and Three.   I instructed you on the elements of those wire fraud offenses in connection with Counts Two and Three, and those instructions apply to this part of Element One.   Because Count One charges a conspiracy, the Government does not have to prove that anyone actually committed the Count Two and Three wire fraud offenses; it need only prove that there was an agreement to do so.

---

[53] Adapted from *Percoco* Instr. III.F.1, at 22.

[54] Trial Ind. Count One, ¶¶ 22-23.

## 2.   Element Two – Membership in the Conspiracy[55]

If you conclude that the Government has established that the charged conspiracy existed, then you must consider, for each defendant, whether the Government has proven beyond a reasonable doubt that that defendant knowingly and intentionally joined the conspiracy with an awareness of the unlawful nature of the conspiracy.

An act is done "knowingly" and "intentionally" if it is done deliberately and purposefully, rather than the product of mistake, accident, mere negligence, or some other innocent reason.

It is not necessary that the defendant was fully informed of all of the details of the conspiracy or knew all of its participants.   He need only have known one other member of the conspiracy and one of its unlawful goals.   He could have joined the conspiracy at any time and need not have received any benefit in return.

I want to caution you, however, that mere association or friendship with a conspirator does not make that person a member of the conspiracy, even if he knows that the conspiracy exists.   In other words, knowledge and association are not enough; rather, to satisfy this element, you must find that the defendant intentionally participated in the conspiracy with the purpose of helping to achieve an unlawful goal.

If you find, for the defendant you are considering, that all of the required elements of conspiracy to commit wire fraud have been proven, beyond a reasonable doubt, then you must find the defendant guilty on Count One.   On the other hand, if you find that any element has not been proven beyond a reasonable doubt, then you must find the defendant not guilty on Count One.

---

[55] Adapted from *Percoco* Instr. III.F.2, at 22-23.

### G.      Count Four– False Statements[56]

Count Four charges Mr. Gerardi with making false statements to federal agents and representatives of the United States Attorney's Office.   Specifically, Count Four alleges that on or about June 21, 2016, Mr. Gerardi falsely denied being involved in tailoring the Syracuse RFP for the benefit of his company.

To satisfy its burden of proof on this count, the Government must prove, beyond a reasonable doubt, the following elements:

First, that on or about June 21, 2016, Mr. Gerardi made a statement to a representative of the United States Government in which he denied involvement in tailoring the Syracuse RFP for the benefit of his company;

Second, that the statement was material;

Third, that the statement was false, fictitious, or fraudulent;

Fourth, that the statement was made knowingly and willfully; and

Fifth, that the statement related to a matter within the jurisdiction of the United States Government.

### 1.  Element One – A Statement[57]

The first element is that the Defendant made a statement denying to representatives of the United States Government his involvement in tailoring the Syracuse RFP for the benefit of his company.

The statement must have been made within the Southern District of New York.   The Southern District of New York includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange and Sullivan Counties.[58]

---

[56] Adapted from *Percoco* Instr. III.I, at 34-35.

[57] Adapted from *Percoco* Instr. III.I.1, at 35.

### 2. Element Two – Materiality[59]

The second element is that the Defendant's statement was material.   A statement is material if it was capable of influencing the Government's decisions or activities.   The Government does not need to prove that anyone actually relied on, made any decision, or took any action based on the Defendant's statement.   This element requires only that the statement was capable of influencing those decisions or activities.

### 3. Element Three – False, Fictitious, or Fraudulent Statement[60]

The third element is that the Defendant's statement was false, fictitious, or fraudulent.   A statement is "false" or "fictitious" if it was untrue when it was made and if the person who made the statement knew at that time that it was untrue.   A statement is "fraudulent" if it was untrue when it was made and if it was made with the intent to deceive the government agency to which it was made.

### 4. Element Four – Knowing and Willful Conduct[61]

The fourth element is that the Defendant acted knowingly and willfully when making the statement.

As I have previously instructed, an act is done "knowingly" if it is done voluntarily and on purpose, as opposed to by mistake or by accident.   An act is done "willfully" if it is done with an intent to do something that the law forbids, that is, with a bad purpose to disobey or disregard the law.

---

[58] On venue, see generally *United States v. Ramirez*, 420 F.3d 134, 138-39 (2d Cir. 2005) ("The crime is 'committed' in the district where the act is performed.").

[59] *Percoco* Instr. III.I.2, at 35.

[60] *Percoco* Instr. III.I.3, at 35-36.

[61] *Percoco* Instr. II.I.4, at 36.

### 5.   Element Five – Matter Within the Jurisdiction of the United States Government[62]

The fifth element is that the statement related to a matter within the jurisdiction of the United States Government.   A statement is "within the jurisdiction of the United States Government" if it concerns an authorized function of a department or agency of the United States.

I instruct you that the Federal Bureau of Investigation and the United States Attorney's Office are departments or agencies of the United States Government.

It is not necessary for the Government to prove that the Defendant knew that the statement would be utilized in a manner that was within the jurisdiction of the United States Government, so long as you find that the statement, in fact, related to a matter that was within the jurisdiction of the United States Government.

If you find that all of the required elements of making a false statement have been proven, beyond a reasonable doubt, as to a particular Defendant, then you must find that Defendant guilty of that charge.   On the other hand, if you find that any element has not been proven as to a particular Defendant, then you must find that Defendant not guilty of that charge.

### H.      Defenses to Intent[63]

Because criminal intent is required for every crime, it follows that good faith on the part of a Defendant is a complete defense to every charge in the indictment.   Good faith means having a state of mind that is honest and absent of criminal intent.

Counts Two and Three charge the Defendants with committing wire fraud, and Count One charges them with entering into a conspiracy to commit wire fraud.   Good faith on the part of a

---

[62] *Percoco* Instr. III.I.5, at 36-37.

[63] Adapted from *Percoco* Instr. III.L, at 39; 1L. Sand et al., Modern Federal Jury Instructions (Crim.), Instr. 8-1; and Jury Instructions § HH.

Defendant is a complete defense to these charges because it is inconsistent with an unlawful intent to commit wire fraud or join a conspiracy to do so.

Count Four charges Mr. Gerardi with making a false statement to federal authorities. Good faith on the part of Mr. Gerardi is a complete defense to that charge, because a statement made with good faith belief in its accuracy does not amount to a false statement and is not a crime. This is so even if the statement is, in fact, erroneous.   A person acts in good faith on this charge when he has an honestly held belief in the truth of the statement at issue.

An honest mistake of judgment or negligence is not unlawful intent, and a Defendant who acts on such a basis can still be acting in good faith.   A person who believes in good faith that his actions comply with the law cannot be found guilty of the crimes charged in this case.   Therefore, if any Defendant you are considering believed he was acting in accordance with the law, he cannot be found to have acted with the required intent and you must find him not guilty.

A Defendant has no burden to establish the defense of good faith.   The burden is on the Government to prove the criminal intent that was charged beyond a reasonable doubt.   If the evidence in this case leaves you with a reasonable doubt whether a Defendant acted in good faith or bad faith, you must find him not guilty.

It is not a defense that a Defendant was motivated by both proper and improper motives. If you find, for a particular count, that a Defendant acted at least in part with the requisite criminal intent, that is sufficient.   On the other hand, if you find that a Defendant acted in complete good faith, then that Defendant's criminal intent has not been proven, and you must acquit on that count.

## IV.   FINAL INSTRUCTIONS

### A.  Right to See Exhibits and Hear Testimony; Communications with the Court[64]

You are about to begin your deliberations.

We will send the Indictment and all of the exhibits that were received in evidence into the jury room for your use during deliberations.   If you want any further explanation of the law or if you want to hear any testimony read back, you may request that.   If you ask for any testimony to be reread, please be as specific as possible so that we can identify exactly what you want read and not waste time reading testimony that you do not want to hear.   If there is any doubt or question about the meaning of any part of the instructions that I have given you, you should not hesitate to send me a note asking for clarification or for further explanation.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching on this case.   There is only one exception to this rule.   If it becomes necessary during your deliberations to communicate with me, you should send me a note, in writing, signed by your foreperson, and give it to the Marshal, who will be available outside the jury room throughout your deliberations.

No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing or orally here in open court.   If you send any notes to the Court, do not disclose anything about your deliberations.   Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

---

[64] *Percoco* Instr. IV.A, at 41-42.

### B.      Notes

Some of you have taken notes throughout this trial.   I want to emphasize to you that notes are simply an aid to memory.   Your notes may not be given any greater weight or influence in the determination of the case than the recollections of other jurors.   Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, because it is the court record that the jury must rely on when making a determination of the facts and rendering a verdict.

### C.      Duty to Deliberate / Unanimous Verdict

You will now retire to decide your verdict.   As I have already explained, for the Government to prevail as to a particular charge against a particular Defendant, the Government must prove each essential element of the charge beyond a reasonable doubt.   If the Government carries its burden, you must find that Defendant guilty of that count.   Otherwise, you must find that Defendant not guilty of that count.

Your verdict must be unanimous.   Each juror is entitled to his or her opinion, but you are also required to exchange views with your fellow jurors.   That is the very essence of jury deliberation.   If you have a point of view and after discussing it with other jurors it appears that your own judgment is open to question, then of course you should not hesitate to yield your original point of view if you are convinced that the other view is one that satisfies your judgment and conscience.   Do not give up a point of view that you conscientiously believe simply because you are outnumbered.   You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.   After any breaks or when you arrive in the morning if your deliberations last more than one day, do not begin to discuss the case until all jurors are present.

### D.      Selecting a Foreperson and the Foreperson's Duties

The first thing you should do when you retire to deliberate is to select one of you to act as your foreperson.   Traditionally, Juror #1 is the foreperson, but that is only tradition.   You are free to select any member of the jury as your foreperson.

### E.      Verdict Form and Return of Verdict

Once you have reached your verdict, you must record it on the verdict form that I have prepared for you.   The foreperson should fill in the verdict sheet, date it, and sign it.   The foreperson should then give a note to the Marshal outside your door stating that you have reached a verdict.   Do not specify what the verdict is in the note.   The foreperson should keep the verdict sheet until I ask for it.   You must all be in agreement with the verdict that is announced in court.

### F.      Exceptions

Please remain seated while I confer with the attorneys.

(Confer at sidebar)

(Swear the Marshal)

### G.      Oath

I remind you that at the very beginning of the case you took an oath.   Your oath sums up your duty.   You must well and truly try the matters in issue and render a true verdict according to the law and the evidence.

#       #       #

You may now retire to the jury room and begin your deliberations.

*       *       *

Dr. Kaloyeros reserves the right to submit additional or revised instructions as the case develops.

34

Respectfully submitted,

/s/ Reid H. Weingarten
Reid H. Weingarten
Michael C. Miller
Michael G. Scavelli
Katherine Dubyak
David B. Hirsch
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

Dated:  June 15, 2018             *Counsel for Alain Kaloyeros*

# ADDENDUM

## ALTERNATIVE INSTRUCTION ON "MONEY OR PROPERTY"
### (Second Element of Wire Fraud)

As explained in footnote 36 of his proposed charge, Defendant Alain Kolayeros respectfully submits this alternative instruction on the second element of wire fraud, money or property, to preserve his position regarding the limits of the Second Circuit's "right to control" theory under applicable Supreme Court precedents.

### 2.       Second Element—Money or Property

The second element the government must prove beyond a reasonable doubt is that the object of the scheme was to deprive Fort Schuyler of money or property.[65]   Moreover, the property must be obtainable.[66]   Here, the indictment charges that the Defendants misrepresented whether the preferred developer RFPs were "fair, open, and competitive" in order to deprive Fort Schuyler of money or property.[67]

I instruct you that the preferred developer awards are not property.[68]   Instead, the Government must prove that the Defendants intended to defraud Fort Schuyler of money or property.   In exceptional circumstances, property includes the right to control how money is

---

[65] *See Cleveland v. United States*, 531 U.S. 12, 19 (2000); *McNally v. United States*, 483 U.S. 350, 356-61 (1987).

[66] *See Sekhar v. United States*, 570 U.S. 729, 737 (2013); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404-09 (2003).   *But see United States v. Finazzo*, 850 F.3d 94, 105-07 (2d Cir. 2017).   Both the Hobbs Act, at issue in *Sekhar* and *Scheidler*, and the wire fraud statute, at issue here, focus on "obtain[ing] property" through prohibited means (in the former, extortion; here, by fraud using wire communications).   The Court should follow the reasoning of *Sekhar* and *Scheidler*; *Finazzo*'s decision to the contrary should be overruled.

[67] Trial Ind. ¶¶ 1, 25, 27.

[68] *See Sekhar*, 570 U.S. at 737 (recommendation to engage in future transaction was not obtainable property); *id.* at 740 (Alito, Kennedy, Sotomayor, J.J., concurring) (recommendation was not property at all); *Cleveland*, 531 U.S. at 25 (yet-to-be-issued regulatory license was not property); *United States v. Evans*, 844 F.2d 36, 41 (2d Cir. 1988) (interest in regulating weapons sales was not property absent right to possess the weapons).

spent.   The loss of the right to control how money is spent constitutes deprivation of property only

when the scheme, if it were to succeed, would result in tangible economic harm to Fort Schuyler.[69]

To prove fraud under a right to control theory, the government must prove that the scheme,

if successful, would have created a discrepancy between what Fort Schuyler reasonably

anticipated and what it actually received, and that the discrepancy would have been deprived Fort

Schuyler of an essential element of its bargain.[70]   It is not enough to show that Fort Schuyler

would have chosen not to contract with the preferred developers or would have selected other

companies as preferred developers.[71]

Intent to defraud Fort Schuyler of money or property requires intent to cause economic

harm to Fort Schuyler.[72]   It is not sufficient to prove that the defendant recognized that some harm

might occur; the defendants must have intended that harm.[73]   To prove intended harm, the

---

[69] *E.g.*, *United States v. Binday*, 804 F.3d 558, 581 (2ed Cir. 2015) ("[T]he loss of the right to control money or property constitutes deprivation of money or property only when the scheme, if it were to succeed, would result in economic harm to the victim."); *Finazzo*, 850 F.3d at 111 ("The fraudulent scheme must implicate tangible economic harm.").

[70] *E.g.*, *Binday*, 804 F.3d at 581 (The government "must prove that the scheme, if successful, would have created a discrepancy between what the insurance companies reasonably anticipated and what they actually received.").

[71] *E.g.*, *id.* ("If all the government proves is that under the scheme the insurance companies would enter into transactions that they otherwise would not have entered into, without proving that the ostensible victims would thereby have suffered some economic harm, then the government will not have met its burden of proof.") (quoted in *Finazzo*, 850 F.3d at 110).

[72] *See Finazzo*, 850 F.3d at 111 ("The fraudulent scheme must implicate tangible economic harm."); *United States v. Carlo*, 507 F.3d 799, 801 (2d Cir. 2007) (government prove that the defendant acted "with specific intent to obtain money or property by means of a fraudulent scheme that contemplated harm to the property interests of the victim"); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987).

[73] *United States v. Gabriel*, 125 F.3d 89, 97 (2d Cir. 1997) (holding that mere "recognition of [a scheme]'s capacity to cause harm to the victims of [its] deception" is not enough to prove "inten[t] to cause harm" and that "contemplated harm" means "intended harm"); *United States v. Autuori*, 212 F.3d 105, 116 (2d Cir. 2000) ("It is not sufficient that the defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims.   Instead, the proof must demonstrate that the defendant had a conscious knowing intent to defraud and that the

government must prove that the scheme, if it were to succeed, would result in economic harm to Fort Schuyler in that there would be a discrepancy between what Fort Schuyler reasonably anticipated to receive in exchange for its money and what it actually received.[74]  "To convict, the Government must prove beyond a reasonable doubt that the misrepresentation caused (or was intended to cause) actual harm of a pecuniary nature or that Fort Schuyler could have negotiated a better deal for itself if it had not been deceived.[75]

---

defendant contemplated or intended some harm to the property rights of the victim.").

[74] *See United States v. Starr*, 816 F.2d 94, 96 (2d Cir. 1987) (no fraud against bulk mail customers where they "received exactly what they paid for" and "there was no discrepancy between benefits 'reasonably anticipated' and actual benefits received") (quoted in *Binday*, 804 F.3d at 570 n.10); *see also Binday*, 804 F.3d at 570; *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994); *United States v. Jabar*, No. 09-CR-170, 2017 WL 4276652, at *9 (W.D.N.Y. Sept. 27, 2017) (holding that misrepresentations did not deprive the UN of its right to control its property, because the Government failed to prove "that the defendants' non-disclosures prevented the UN from negotiating a better bargain on a radio station" and the UN "ended up with what it bargained for--an Iraqi radio station").

[75] *Mittelstaedt*, 31 F.3d at 1217.